387 P.2d 336

Dale W. DAULTON, Plaintiff-Appellant,

v.

LAUGHLIN BROS. DRILLING COMPANY
and The Travelers Insurance Com-
pany, Defendants-Appellees.

No. 7289.

Supreme Court of New Mexico.

Dec. 2, 1963.

Heidel & Swarthout, Lovington, for ap-
pellant.

Girand, Cowan & Reese, Hobbs, for ap-
pellees.

CHAVEZ, Justice.

This is an appeal from an order dis-
missing appellant's workmen's compensa-
tion claim.

Appellant's complaint alleged that, in the
course of his employment with appellee's
drilling company, he suffered an injury on a
drilling rig in Lea County, New Mexico,
injuring his back while removing and lifting
a valve cap, and that, as a natural and direct
result thereof, he suffered disability. Ap-
pellant further alleged that appellees had
actual knowledge and notice of said injury.
Appellees answered, admitting certain al-
legations and denying the remainder, and
affirmatively alleged that they had no notice
of a compensable injury under the terms of
the Workmen's Compensation Act. The
case was tried by the court and during the
cross-examination of claimant, the first wit-
ness, appellees moved that the case be dis-
missed because no written notice was given
within 30 or 60 days after the accident and
injury. The trial court granted the motion,
and the order of dismissal recites that,
during said cross-examination, appellees
moved for an order of dismissal for the
reason that, by appellant's own testimony,
appellant admitted that his claimed accident

did not occur in the presence of any superintendent, foreman or other agent in charge of the work at the time and place where the accident occurred; that he, the appellant, did not give written notice of the accident and injury to appellees within either 30 or 60 days; and that the appellant's claimed injury did not, nor did any other cause beyond appellant's control, prevent him from giving written notice to his employer as required by law. The trial court announced that the motion was well taken and granted the motion. From the order of dismissal, claimant appealed.

Thus, we are brought to the point relied upon for reversal by claimant-appellant which is: That a claimant's admission, that his accident did not occur in his foreman's presence and that he gave no written notice, does not of itself preclude recovery under the Workmen's Compensation Act; and that the trial court erred in summarily dismissing appellant's complaint during his cross-examination. Appellees contend that the trial court's action was proper since, by appellant's own admissions, he only casually mentioned his injury to his driller and tool pusher and did not mention the accident as required by the Workmen's Compensation Act.

The section of the Workmen's Compensation Act in question, § 59–10–13.4, N.M.S. A., 1953 Comp., provides:

"59–10–13.4. Notice to employer.— A. Any workman claiming to be entitled to compensation from any employer shall give notice in writing to his employer of the accident and of the injury within thirty [30] days after their occurrence; unless, by reason of his injury or some other cause beyond his control the workman is prevented from giving notice within that time, in which case he shall give notice as soon as may reasonably be done, and at all events not later than sixty [60] days after the occurrence of the accident.

"B. No written notice is required to be given where the employer or any superintendent or foreman or other agent in charge of the work in connection with which the accident occurred had actual knowledge of its occurrence."

No contention is made by appellant that written notice was given, but he does contend that the employer had actual knowledge of the occurrence, as required in subsection B of the above quoted statute, even though the evidence discloses that at the time appellant was injured, the driller, Mr. Hurley, was upon the rig floor and could not see appellant; neither could appellant see the driller or the tool pusher, Mr. Shirley. Appellant's contention is based upon the testimony of appellant who, after testifying that he was removing some valve heads

**234**

weighing about 40 pounds with two other employees, testified:

"Q. Now, tell us just what happened, in your own words, what happened at the time of this accident.

"A. We were taking the nuts off first off of the pump. Then, I reached and got the pump, the head and stepped up on the pump aways and pulled it off. That is when I got blind and fell backwards.

\* \* \* \* \* \*

"Q. What do you mean when you say, 'got blind'? What do you mean?

"A. I just kinda went blind for a minute and fell backwards. Then I sat down.

"Q. Did you feel anything when you went blind?

"A. Yeah, aw, just a little rip like, seems to me like.

\* \* \* \* \* \*

"Q. You say you sat down then?

"A. Yes.

"Q. What did you sit down for?

"A. Just sat down. I was kind blind and staggered there.

"Q. What did you do?

"A. Sat down and smoked a cigarette. Then, one of the other guys, the big guy, Slim, we called him Slim. His name is Ernest. He told me to come over and help him. I told him I was hurt. He just kinda grinned and went ahead working and then came over and sat down and smoked a cigarette with me.

\* \* \* \* \* \*

"Q. Now, after you smoked the cigarette with Ernest there, what did you do after that?

"A. Got up on the floor and told my driller that I thought I was hurt. He says sit down in the doghouse. I told him that I thought I had hurt myself. Nothing was said about it. He was working on the floor, him and one of the other boys. I sat up there for a little while. Then, walked around on the floor and then went down and walked around. Never did help no more on the pump. You know, just generally walked around.

"Q. Then, did you all change your clothes and so forth at the end of that shift?

"A. Yes, sir.

\* \* \* \* \* \*

"Q. Was the driller there?

"A. Yes.

"Q. Was there any conversation at that time?

"A. I told him as I was tying my shoes that I reached up to get ahold of it and I kinda felt another little pain. I told him I believe I had hurt myself, but there was no more said about it.

\* \* \* \* \* \*

"Q. Then, the next day did you go out on the job again?

"A. Yes, sir.

"Q. Was there any conversation that day about your injury?

"A. Yeah. When I started out to the car that morning, I was kinda limping, crippled or limping and just hobbling along. The boys called me a worm. Said I had got worm bit. They was all laughing and talking about it on the way to work.

\* \* \* \* \* \*

"Q. \* \* \* How long did you continue to work?

"A. It was either three or four days. I won't say for sure. I don't know exactly, but I think it was four days.

\* \* \* \* \* \*

"Q. What did you do then?

"A. Took off work.

\* \* \* \* \* \*

"Q. What were the circumstances? In other words, why did you take off work?

"A. Went and told my driller, we had been loading some pipe in the afternoon, some drill—water line pipe. Just before we started it, I told him that I believed I would take off awhile on the account of I was hurting. I asked him if I could get my money. He told me that he figured it would be all right for me to go in and see the pusher. So, I went and seen the pusher, oh, a few minutes later and he told me that he would pay me.

\* \* \* \* \* \*

"Q. Was there any conversation between you and the tool pusher about the fact of your injury?

"A. No, sir. I just told him I got hurt.

"Q. Told him you had got hurt?

"A. Yes. But, there was nothing said about it. I didn't think it was real serious."

Under this set of facts, appellant contends that his employer, through the driller, had actual knowledge of the occurrence and, as such, the dismissal by the trial court was erroneous and should be reversed.

The actual knowledge required by the employer to excuse written notice was defined in Ogletree v. Jones, 44 N.M. 567, 106 P.2d 302, wherein we said:

"Our statute requires actual knowledge on the part of the employer, 'or any superintendent or foreman or other agent in charge of the work in connection with [which] such injury occurred,' before written notice is to be dispensed with. Notice in casual conversation is insufficient. * * * It is not enough for one to say he is injured and even show the injured limb without some showing that notice was given or that the employer had *actual knowledge* of what caused it. * * *

"This knowledge which the statute requires means 'more than just putting upon inquiry and involves more than knowledge of the mere happening of an accident.' * * * And the knowledge which the employer must have to excuse a formal notice is of a compensable injury. * * *"

We again adhere to this position. Appellant, under the facts shown, did not give notice in writing, nor did the employer have actual knowledge of the occurrence within the time limit. Thus, the trial court was correct in dismissing the action, since, as a matter of law, no notice was given.

The holding in this case in no way conflicts with the case of Lozano v. Archer, 71 N.M. 175, 376 P.2d 963, wherein we said:

"We find no merit in appellants' first contention that the claim for compensation is barred for failure to give notice in writing. * * * The verbal reporting of an injury by accident arising out of and in the course of employment to the employer, or to his manager, in the circumstances here present, satisfies the requirement of 'actual knowledge.' Buffington v. Continental Casualty Company, 69 N.M. 365, 367 P.2d 539; Winter v. Roberson Construction Company, 70 N.M. 187, 372 P.2d 381, and 2 Larson's Workmen's Compensation Law, §§ 78.00, 78.31."

Neither does it conflict with Winter v. Roberson Construction Company, 70 N.M. 187, 372 P.2d 381, where we said:

" * * * The verbal communications between claimant and the employer's foreman, resulting in the issuance of the order, would lead to a strong inference that they amounted to more than the mere casual conversations which took place in the cases of Ogletree v. Jones, 44 N.M. 567, 106 P. 2d 302 and Bolton v. Murdock, 62 N.M. 211, 307 P.2d 794, * * *."

The case of Buffington v. Continental Casualty Company, 69 N.M. 365, 367 P.2d 539, has been cited by both parties in support of their respective positions. In that case, the district court dismissed the action *sua sponte* at a pretrial conference on the basis of claimant's deposition, which appellee argued constituted an admission of all material facts barring recovery. We re-

versed and remanded the case, holding that the district court erroneously granted summary judgment, since there were factual issues to be resolved such as knowledge, notice, latent injury, and the date compensation was due. In Buffington, there were indications in claimant's deposition that the employer might have had actual knowledge of the accident.

Finding no error, the judgment of the district court is affirmed.

It is so ordered.

NOBLE and MOISE, JJ., concur.